# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 29, 2012

No. 11-10165
Summary Calendar

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

CYDRIC COLEMAN,

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:10-CR-38-1

Before BENAVIDES, STEWART, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Cydric Coleman appeals his jury conviction for one count of conspiracy to distribute and possess with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of cocaine base in violation of 21 U.S.C. §§ 841 and 846, one count of conspiracy to maintain drug-involved premises in violation of § 846 and 21 U.S.C. § 856, and two counts of possession of a firearm in furtherance of these drug trafficking crimes in violation of 18 U.S.C. § 924(c)(1)(A) and (c)(1)(C). Coleman contends that he withdrew from

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

the charged conspiracies on October 16, 2007, when he gave officers a full confession detailing his involvement in the West Side Gator Boys (Gator Boys) drug trafficking organization and the identity of his coconspirators. Consequently, he argues that the district court erred in admitting evidence related to events that transpired after his withdrawal from the conspiracies and in denying his motion for a mistrial.

We review the district court's evidentiary rulings for an "abuse of discretion, subject to harmless error review." *United States v. Jackson*, 636 F.3d 687, 692 (5th Cir. 2011). The district court's denial of a motion for mistrial based on the admission of prejudicial evidence is also reviewed for an abuse of discretion. *United States v. Valles*, 484 F.3d 745, 756 (5th Cir. 2007). "A new trial is required only when, after a review of the entire record, it appears that there is a significant possibility that the prejudicial evidence had a substantial impact on the jury verdict." *Id.* We give great weight to the district court's assessment of the prejudicial effect of the evidence, and prejudicial evidence may be rendered harmless by curative instructions to the jury. *Id.*

Even if Coleman's October 16, 2007, confession was sufficient to demonstrate his withdrawal from the conspiracies, *see United States v. Jimenez*, 622 F.2d 753, 757-58 (5th Cir. 1980), and the district court abused its discretion in admitting evidence related to events that transpired after his withdrawal, the error was harmless. The district court instructed the jury that if it found that Coleman had met his burden of proving that he withdrew from the conspiracy on October 16, 2007, it could not consider any evidence after that date. "[J]uries are presumed to follow their instructions." *Zafiro v. United States*, 506 U.S. 534, 540 (1993) (internal quotation marks and citation omitted). Thus, any prejudice was effectively mitigated by the district court's cautionary instruction. *See Valles*, 484 F.3d at 756-57.

Further, the pre-withdrawal evidence of guilt was overwhelming. Several witnesses testified that the Gator Boys controlled and operated numerous drug

houses including: 4009 Ivanhoe Street, 3206 Puget Street, 3212 Puget Street, 2021 Morris Street, 2025 Shaw Street, and 2008 Kraft Street. The gang's leaders Patrick Weatherall (Weatherall), Tyrone Weatherall, and Devinn Mitchell secured the cocaine, converted it to crack cocaine, and supplied it to their mid-level supervisors and street dealers. Weatherall also furnished Coleman and others with houses from which to sell the drugs and firearms for protection against robberies. Coleman and the other mid-level supervisors controlled the Gator Boys's numerous drug houses and were responsible for collecting the drug proceeds.

Codefendant Brandon Smith testified that he and Coleman were members of the Gator Boys gang, that they often sold crack cocaine together at various Gator Boys drug houses, and that Coleman was in charge of running several drug houses. Smith also testified that he, Coleman, and other Gator Boys working at the drug houses carried firearms for protection approximately 99.9 percent of the time. Coleman confessed that he was a member of the Gator Boys, that he regularly purchased crack cocaine from Weatherall, and that he sold these drugs at Weatherall's drug houses on Ivanhoe Street, Puget Street, and Morris Street.

On July 10, 2006, Coleman witnessed a coconspirator sell 14.9 grams of crack cocaine to an undercover officer at 4009 Ivanhoe Street. Coleman was later arrested at the drug houses on 4009 Ivanhoe Street, 3206 Puget Street, 2021 Morris Street, and 2008 Kraft Street. Searches of these houses resulted in the seizure of various quantities of crack cocaine and marijuana, as well as other evidence of drug trafficking. At the time of Coleman's arrest at the Gator Boys drug house on 3206 Puget Street, officers observed a semi-automatic handgun. The handgun was loaded, readily accessible, and in close proximity to the drugs. As a convicted felon, Coleman's possession of the handgun was unlawful. Although other coconspirators were also present and arrested, law enforcement officers testified that the handgun was in plain view and that Coleman was

running the house. Although no drugs were found at the Gator Boys drug house on 2021 Morris Street at the time of Coleman's arrest for being a felon in possession of a firearm, law enforcement officers explained that they did not have probable cause to search the house. Further, Coleman confessed that he had been selling drugs from this house for several months prior to his arrest and that Weatherall had given him the firearm for protection against robberies. In light of this overwhelming pre-withdrawal evidence of guilt, any error in admitting evidence related to events that transpired after Coleman's purported withdrawal from the conspiracy and in denying his motion for a mistrial was harmless. *See United States v. Hawley*, 516 F.3d 264, 268 (5th Cir. 2008) ("When the other evidence of guilt is overwhelming, and the error would not have substantially influenced the jury's verdict, the error is harmless.").

Coleman also contends that the district court plainly erred in failing to obtain a special verdict on the issue whether he withdrew from the conspiracy on October 16, 2007. The district court's refusal to obtain a special verdict is reviewed for an abuse of discretion. *Solis v. Rio Grande City Indep. Sch.*, 734 F.2d 243, 248 (5th Cir. 1984). However, because Coleman did not object to the verdict form in the district court, we review for plain error. *See United States v. Jones*, 132 F.3d 232, 245 (5th Cir. 1998).

As previously discussed, the district court instructed the jury that if it found that Coleman had met his burden of proving that he withdrew from the conspiracy on October 16, 2007, it could not consider any evidence after that date. The district court's instructions were clear, and Coleman has failed to rebut the presumption that the jury followed these instructions. *See Zafiro*, 506 U.S. at 540. Consequently, the general verdict is not ambiguous, and the district court did not abuse its discretion in failing to obtain a special verdict. Moreover, Coleman cannot show that any error affected his substantial rights because the pre-withdrawal evidence of guilt was overwhelming. Therefore,

Coleman has failed to show plain error.  *See Puckett v. United States*, 556 U.S. 129, 135 (2009).

Finally, Coleman contends that the evidence at trial was insufficient to sustain his conviction for possession of a firearm in furtherance of a conspiracy to maintain drug-involved premises.  Because he moved for a judgment of acquittal at the close of the Government's case and renewed the motion after the jury returned its verdict, Coleman has properly preserved his sufficiency claim for appellate review.  *See United States v. Villarreal*, 324 F.3d 319, 322 (5th Cir. 2003).

To prove possession of a firearm in furtherance of a drug trafficking crime, the Government must prove that the defendant knowingly possessed a firearm and that this possession furthered, advanced, or helped forward a drug trafficking offense.  *United States v. Ceballos-Torres*, 218 F.3d 409, 415 (5th Cir.), *amended on other grounds*, 226 F.3d 651 (5th Cir. 2000).  To prove a drug conspiracy, the Government must prove beyond a reasonable doubt: "1) the existence of an agreement between two or more persons to violate federal narcotics laws; 2) the defendant's knowledge of the agreement; and 3) the defendant's voluntary participation in the agreement."  *United States v. Gonzales*, 79 F.3d 413, 423 (5th Cir. 1996).  To prove maintenance of drug-involved premises, the Government must prove that the defendant "either managed or controlled any building, room, or enclosure, either as an owner, lessee, agent, employee, [occupant,] or mortgagee, and knowingly and intentionally rented, leased, or made available for use, with or without compensation, the building, room or enclosure for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance."  *United States v. Onick*, 889 F.2d 1425, 1431 n.1 (5th Cir. 1989); § 856(a)(2).

Viewing the evidence in the light most favorable to the verdict, the evidence was sufficient to establish that Coleman and others conspired to maintain the drug houses on 3206 Puget Street and 2021 Morris Street and

that Coleman knowingly possessed firearms at those drug houses in furtherance of that conspiracy. *See United States v. Morgan,* 117 F.3d 849, 858 (5th Cir. 1997); *see also United States v. Pruneda-Gonzalez,* 953 F.2d 190, 193 (5th Cir. 1992). Accordingly, the district court's judgment is AFFIRMED.